[Cite as *State v. Mayernik*, 2017-Ohio-7452.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# TRUMBULL COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | **O P I N I O N** |
| Plaintiff-Appellee, | : | |
| | | **CASE NO. 2016-T-0102** |
| - vs - | : | |
| MICHELE RENEE MAYERNIK, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal from the Trumbull County Court of Common Pleas, Case No. 2015 CR 00666.

Judgment: Affirmed.

*Dennis Watkins,* Trumbull County Prosecutor, and *Ashleigh Musick,* Assistant Prosecutor, Administration Building, Fourth Floor, 160 High Street, N.W., Warren, OH 44481 (For Plaintiff-Appellee).

*Michael Partlow*, 112 South Water Street, Suite C, Kent, OH 44240 (For Defendant-Appellant).

CYNTHIA WESTCOTT RICE, P.J.

{¶1} Appellant, Michele R. Mayernik, pleaded no contest to one count of possession of drugs, a felony of the fifth degree, in violation of R.C. 2925.11(A) and (C)(2)(a). Prior to entering the plea, she filed a motion to suppress evidence, which was denied by judgment of the Trumbull County Court of Common Pleas. That judgment is the subject of the instant appeal. For the reasons discussed below, we affirm.

{¶2} On the night of July 9, 2015, Trooper John Lamm of the Ohio State Highway Patrol initiated a traffic stop of a vehicle with two occupants in Warren, Ohio. Prior to initiating the stop, the trooper first noticed the vehicle had a remarkably loud exhaust. While following the vehicle, it made a left turn onto Market Street into the curbside lane, instead of the left-most lane. The vehicle then made a second wide, right turn onto Elm Road into the left-most lane before veering into the curb lane without a signal. Trooper Lamm activated his lights and initiated the traffic stop.

{¶3} Trooper Lamm approached the passenger side of the vehicle. He noticed the interior of the vehicle was extremely cluttered. He requested both the driver's and the passenger's licenses; the driver produced his license but was unable to locate the vehicle registration or proof of insurance. The trooper noticed appellant acting nervously, breathing heavily, and avoiding eye contact. As she opened her purse to retrieve her license, she shielded the contents from the officer. The trooper found each of these behaviors suspicious. Ultimately, appellant surrendered her license.

{¶4} Trooper Lamm walked to the driver's side of the car and engaged the driver. He noticed the driver's eyes "appeared glassed over." The driver also appeared nervous, avoiding eye contact and speaking quickly. From the driver's-side window, the trooper noticed a pill bottle in the center console of the vehicle. The driver advised the trooper that the bottle was a prescription that belonged to his young son. At this point, the trooper asked the driver to exit the vehicle to check for signs of impairment.

{¶5} After concluding the driver was not impaired, the trooper again inquired into the pill bottle and entered the driver's information into his computer. The officer was able to confirm, to his satisfaction, the prescription was for the driver's son. Based upon his observations, i.e., each individual's nervous behavior and lack of eye contact,

2

as well as the disordered nature of the vehicle, the trooper asked the driver if he had any illegal narcotics in his possession. The driver was cooperative and responded that he had no narcotics; he further consented to a search of the vehicle. When asked whether he knew if appellant had any illegal narcotics, the driver first said "no," then qualified his answer, stating "she better not."

{¶6} After confirming the identity of the driver, the trooper returned to the vehicle and engaged appellant. He asked appellant if she had any drugs in her possession. At first, she responded no. Appellant, however, was still avoiding eye contact and appeared "overly nervous and [was] breathing heavy." He also noticed appellant gripping her purse with both hands. The trooper believed these actions to be additionally suspicious; he testified:

> {¶7} Typically, everybody does get nervous but that nervousness goes away fairly soon. When I walked back up to the vehicle for the second time, her being a passenger in the vehicle, she's not driving so she doesn't need to worry about DUI or driving under suspension and she still had that nervous behavior. She had plenty of time to ease her fear from the traffic stop. And when I go back up there, she is still nervous. That's another indicator for me. Typically, people - - their nerves calm down after some time.

{¶8} Trooper Lamm again asked appellant if she had any drugs on her and added "tell me what you have and I will help you." Appellant looked down and stated she had a Suboxone pill in her possession and, ultimately gave it to the trooper. Appellant was then provided *Miranda* warnings. The trooper asked appellant if she had any other drugs, to which she replied she may have a Suboxone strip on her. She additionally stated she did not have a valid prescription for Suboxone. Appellant was placed under arrest after which the trooper searched her purse; he did not locate any

3

additional contraband, but discovered an orange needle cap amongst appellant's belongings.

{¶9} Appellant was ultimately indicted on one count of possession of drugs, a felony of the fifth degree, in violation of R.C. 2925.11(A) and (C)(2)(a). She initially pleaded not guilty and filed a motion to suppress evidence. In the motion, she argued the duration of the traffic stop was of an unreasonable duration and the length was unsupported by articulable facts that would support the detention. After a hearing, the trial court requested post-hearing briefs. Eventually, on July 18, 2016, appellant entered a plea of no contest, which the trial court accepted. No formal judgment entry denying appellant's motion to suppress appeared on record prior to appellant's plea. Appellant and the state both acknowledge, however, the trial court verbalized its decision to deny the motion. Appellant was ultimately sentenced to five years community control. Appellant appealed the trial court's judgment denying her motion to suppress.

{¶10} Upon appellant's motion, this court remanded the matter to the trial court to issue a written findings of fact and conclusions of law supporting its oral denial of the motion. The trial court complied with this court's remand order and appellant filed her brief assigning the following error:

{¶11} "The trial court erred, as a matter of law, by denying appellant's motion to suppress evidence."

{¶12} Under her sole assignment of error, appellant claims the trial court erred when it did not suppress evidence obtained from the traffic stop because it was obtained during the course of a custodial interview in which appellant was not properly Mirandized.

4

{¶13} Initially, appellant did not argue the *Miranda* issue before the trial court. Appellant asserts "[t]he dispositive issue in this case concerns the propriety of the trial court's conclusion that Appellant's conversation with the arresting officer at the time she admitted to having the drug in question was purely voluntary and that Appellant could leave at any time." The trial court concluded appellant's statements were freely and voluntarily made *after being advised of her Miranda warnings.* The post-*Miranda* statement, viz., that appellant did not have a valid prescription for Suboxone, is not at issue in this appeal. Because the issue of the validity of appellant's initial admission to possessing Suboxone was not raised, it has been forfeited, save plain error, pursuant to Crim.R. 52(C). *See State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, ¶15.

{¶14} There are three limitations courts must observe in correcting plain error.

{¶15} First, there must be an error, *i.e.,* a deviation from the legal rule. * * * Second, the error must be plain. To be 'plain' within the meaning of Crim.R. 52(B), an error must be an 'obvious' defect in the trial proceedings. * * * * Third, the error must have affected 'substantial rights.' We have interpreted this aspect of the rule to mean that the trial court's error must have affected the outcome of the [proceeding]." *State v. Barnes* (2002), 94 Ohio St.3d 21, 27, 759 N.E.2d 1240. Courts are to notice plain error "only to prevent a manifest miscarriage of justice." *State v. Long* (1978), 53 Ohio St.2d 91, 7 O.O.3d 178, 372 N.E.2d 804, paragraph three of the syllabus. *Payne*, *supra*, ¶16.

{¶16} In *Miranda v. Arizona*, 384 U.S. 436 (1966)*,* the United States Supreme Court held that an individual must be advised of his or her constitutional rights when law enforcement officers initiate questioning after that person has been taken into custody or otherwise deprived of his or her freedom in any significant way. Any statement given under such a custodial interrogation, without the issuance of *Miranda* warnings, may be excluded in a future criminal prosecution. A custodial interrogation is defined as "questioning initiated by law enforcement officers after a person has been taken into

5

custody or otherwise deprived of his freedom of action in any significant way." *Id.* at 445. "The determination whether a custodial interrogation has occurred requires an inquiry into 'how a reasonable [person] in the suspect's position would have understood his situation.'" *State v. Biros*, 78 Ohio st.3d 426, 440 (1997), quoting *Berkemer v. McCarty*, 468 U.S. 420, 440-442 (1984). "[T]he ultimate inquiry is simply whether there is a 'formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest." *California v. Beheler* , 463 U.S. 1121, 1125 (1983).

{¶17} In *Berkemer*, *supra*, the United States Supreme Court held that individuals who are temporarily detained pursuant to roadside traffic stops are not "in custody" for *Miranda* purposes. The *Berkemer* court observed that although an ordinary traffic stop curtails the freedom of action of the detained motorist and imposes some pressures on the detainee to answer questions, such pressures do not sufficiently impair the detainee's ability to exercise his or her privilege against self-incrimination to trigger *Miranda* warnings. *Id.* at 421. The Court noted "the atmosphere surrounding an ordinary traffic stop is substantially less 'police dominated' than that surrounding the kinds of interrogation at issue in *Miranda* itself * * *." *Berkemer*, *supra*, at 438-439. Accordingly, an individual temporarily detained as part of a routine traffic or investigatory stop is not generally deemed "in custody," and, hence, is not entitled to *Miranda* warnings. *State v. Farris*, 109 Ohio St.3d 519, 2006-Ohio-3255, ¶13, citing *Berkemer*, *supra*, at 439-440; *see also State v. Brocker,* 11th Dist. Portage No. 2014-P-0070, 2015-Ohio-3412, ¶17 ("most traffic stops and accompanying investigatory questioning do not constitute custodial interrogations warranting the right to *Miranda* warnings.")

{¶18} In this case, Trooper Lamm was justified in stopping the driver after observing several traffic violations. After requesting identification from both individuals, he noted several indicators that made him suspicious of criminal activity, e.g., the occupants' overly-nervous behavior, the driver's glassed-over eyes, a pill bottle in the vehicle's console, and the manner in which appellant seemed to conceal the contents of her purse while seeking her identification. After confirming the driver was not under the influence and his information was valid, he asked the driver if appellant had any narcotics. The driver responded "she better not," which prompted the trooper to further suspect, in light of her behavior, that she might, in fact, have contraband. The trooper returned to the vehicle, noticing appellant was still overly nervous and breathing heavy. These facts further gave him suspicion of criminal activity because, in his view, appellant had adequate time to calm herself while the trooper interacted with the driver.

{¶19} With respect to the issue of appellant's alleged "custody" prior to Trooper Lamm's questioning, the trooper was the only officer on site during the entirety of the stop. Moreover, appellant remained in the passenger seat of the stopped vehicle while the trooper addressed her. Appellant was not asked to exit the vehicle or directed to remain in the vehicle at any time. Hence, there is nothing to indicate appellant's freedom of movement was restrained. Moreover, the facts fail to show appellant was compelled or induced to admit she possessed the drug. Although Trooper Lamm was in possession of appellant's driver's license at the time of the questioning, this fact did not inhibit appellant's ability to refuse to answer the trooper's question or continue denying she possessed anything. A reasonable person in appellant's position would not have believed she was under arrest or restrained in a way tantamount to a formal arrest. We therefore hold Trooper Lamm's investigative questioning did not constitute a custodial

interrogation warranting the right to *Miranda* warnings. *State v. Gaston*, 110 Ohio App.3d 835 (11th Dist.1996) (suspect not in custody when, upon being frisked and asked whether he had narcotics, admitted to having "weed" and a "rock"); *see also Brocker*, *supra*, (no custodial interrogation where trooper smelled alcohol and suspect removed from vehicle, placed into front seat of patrol car, and asked questions about alcohol consumption); *State v. Campbell,* 2nd Dist. Montgomery No. 26497, 2015-Ohio-3381, (determining that *Miranda* not implicated during investigative stop to ascertain whether eighteen-year-old defendant had been drinking when no evidence that defendant handcuffed, informed that he was under arrest, or detained in police car); *State v. Smoot,* 2d Dist. Montgomery No. 26297, 2015-Ohio-2717, ¶41 (determining that defendant not in custody for purposes of *Miranda* when officer asked defendant about the contents of his vehicle during traffic stop); *State v. Ware,* 8th Dist. Cuyahoga No. 89945, 2008-Ohio-2038 (concluding that *Miranda* not applicable during routine traffic stop in which officer asked suspect if he had any weapons, drugs, or contraband in the vehicle and suspect indicated he had a crack pipe).

{¶20} Because we discern no error, there is no plain error to correct in this matter. Appellant's sole assignment of error lacks merit.

{¶21} For the reasons discussed in this opinion, the judgment of the Trumbull County Court of Common Pleas is affirmed.


TIMOTHY P. CANNON, J.,

THOMAS R. WRIGHT, J.,

concur.

8